# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 424 | **DATE** | December 27, 2000 |
| **CASE TITLE** | Cleveland v. U.S. Internal Revenue Service, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due_____.  Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ☐  Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐  Trial[set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10)  ■  [Other docket entry]  Defendant Rotman's motion to dismiss [ ] is granted  Counts III and IV of the amended complaint are dismissed.  However, plaintiff, as executrix, is granted leave to file an amended Count III, alleging facts to show how defendant Rotman's alleged breach of contract caused Cleveland emotional distress and how that was foreseeable to Rotman.  The amendment may be filed by January 17, 2001 and Defendant should plead to the amendment by February 7, 2001.  A status conference is set for February 14, 2001 at 9:30 a.m.

(11)  [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | number of notices | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | | |
| X | Notices MAILED by judge's staff. | | DEC 2 8 2000 | | |
| | Notified counsel by telephone. | | date docketed | | 16 |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to _____ | | date mailed notice | | |
| KAM | courtroom deputy's initials | | KAM | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

(Reserved for use by the Court)

00-0424.001-LH

December 27, 2000

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ROSE CLEVELAND, individually )
and in her capacity as Executrix )
of the estate of ROBERT CLEVELAND, )
               Plaintiff, )
                   )
  v. )   No. 00 C 424
                   )
THE UNITED STATES OF AMERICA )
(Department of the Treasury, )
Internal Revenue Service;) DAVID )
PERLMAN, individually and in his )
capacity as a Revenue Officer of )
the Internal Revenue Service; )
MICHAEL ROTMAN, Esquire )
             Defendants. )

DOCKETED
DEC 2 8 2000

## MEMORANDUM OPINION

Before the court is defendant Michael Rotman's motion to dismiss Counts III and IV of the amended complaint for failure to state a claim on which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the motion is granted. However, we also grant plaintiff leave to file an amended complaint within the limited terms explained in this opinion.

16

**BACKGROUND**

Plaintiff, Rose Cleveland, is the executrix of the estate of her husband, Robert Cleveland ("Cleveland"), who committed suicide on January 26, 1998. This suit arises out of protracted tax collection proceedings which plaintiff alleges ultimately led to Cleveland's death. Plaintiff filed a four-count amended complaint, on her own behalf and on behalf of Cleveland's estate, asserting various claims against three defendants: the Internal Revenue Service ("IRS"), IRS Officer David Perlman and Cleveland's attorney, Michael Rotman. For the purposes of this motion, we are concerned only with the claims against defendant Rotman: legal malpractice claims grounded in contract (Count III) and in tort (Count IV).

In considering a motion to dismiss, we accept the facts as alleged in the complaint. In the late-1960s, Cleveland, who was an attorney, got into a legal dispute with the IRS over a complicated tax issue. In the mid-1980s, after 15 years of controversy, the IRS commenced collection proceedings against him. Plaintiff alleges that the IRS engaged in a campaign of unauthorized activities that effectively stripped the Clevelands of all assets and income. Unable to pay his legal bills and the interest and

penalties assessed by the IRS, Cleveland went into debt and was ultimately forced to give up his law practice. In 1991, and for several years thereafter, the IRS confiscated Cleveland's social security income. The Clevelands had been living off plaintiff's modest income and credit cards. But with the confiscation of the social security income, plaintiff was forced to file for personal bankruptcy.

Plaintiff alleges that the constant harassment and intimidation by the IRS caused Cleveland severe mental anguish and that he became extremely depressed. On at least one occasion, Cleveland's therapist informed the IRS in writing that Cleveland was suicidal.

In 1996, defendant Rotman agreed to act as Cleveland's attorney in his relations with the IRS. At the time, Cleveland was not in a position to calculate his income and expenses for purposes of his tax returns. Apparently, his financial records had been lost during office moves or discarded by other people during previous divorce proceedings. Moreover, the IRS refused to furnish him with details of the amounts that it had levied over the years. Plaintiff alleges that defendant knew that Cleveland had no tax records and that defendant failed to verify the relevant income

information with the IRS.  In advising Cleveland, defendant told him to "guess" at the amounts of his income and expenses over a 10-year period and to list those amounts on his tax returns.

Evidently,  Cleveland's estimates did not tally with the IRS records.  Even though it had recently declared Cleveland's account uncollectible, the IRS decided to conduct another audit of his affairs.  In February 1997, Cleveland was notified of the proposed audit and his depression deepened.  His therapist intervened and succeeded in having the audit postponed.  On January 26, 1998, however, shortly before the rescheduled audit, Cleveland committed suicide.  He was 74 years old at the time of his death.

Count III alleges that defendant breached his contractual attorney-client relationship with Cleveland by failing to verify Cleveland's financial information with the IRS and by advising Cleveland to guess at the amounts of his income and expenses for the purposes of his tax returns.  The gist of plaintiff's claim is that defendant's malpractice precipitated the IRS decision to audit, which, in turn, caused Cleveland severe financial and psychological harm and, ultimately, led to his suicide.  Plaintiff alleges that defendant was aware of Cleveland's fragile emotional state and the history of harassment he suffered at the hands of the

IRS. Count IV essentially reiterates the legal malpractice claim stated in Count III but styles it in the tort of negligence. In both counts, plaintiff claims that, for her own part, she has suffered financial harm, mental anguish and emotional distress as a result of Cleveland's death.

## DISCUSSION

### I.  Plaintiff's Claims as Executrix

A complaint against an attorney for professional malpractice may be couched in either contract or tort. Under a breach of contract theory, damages are predicated upon the mutual expectations of the parties. Plaintiff must allege the existence of an agreement establishing an attorney-client relationship, breach of that agreement, and resulting damages. <u>Collins v. Reynard</u>, 154 Ill.2d 48, 607 N.E.2d 1185, 1186 (1993). Liability in tort is premised on an attorney's obligation to protect his client from unreasonable risks of harm. A negligence claim requires the following elements:   the existence of an attorney-client relationship that establishes a duty on the part of the attorney; a negligent act or omission constituting a breach of that duty; proximate cause; and damages. <u>Serafin v. Seith</u>, 284 Ill.App.3d 577, 672 N.E.2d 302, 309 (1st Dist., 1996). In Illinois, "[w]hether a duty will be recognized under tort law depends upon

the forseeability of the injury, the likelihood of the injury, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the defendant." <u>Collins</u>, 607 N.E.2d at 1186.

Defendant moves to dismiss Count III (contract) and Count IV (tort) on the ground that plaintiff has failed to adequately plead damages as an element of her claims.[1] Plaintiff seeks to recover for three forms of injury allegedly suffered by Cleveland: financial loss, emotional distress and suicide. According to defendant, the claims for financial loss are not supported by the facts and the claims for emotional distress and suicide are not supported by the law.

---

[1] Defendant also contends that plaintiff has failed to plead proximate cause as an element of her negligence claim. Specifically, defendant argues that plaintiff has failed to allege that, but for defendant's malpractice, Cleveland would have been successful against the IRS. This strikes us as an unduly narrow approach. Whereas malpractice claims arising out of the conduct of litigation must be predicated upon an unfavorable result in the underlying suit, as a general rule a client need only prove that she suffered <u>some</u> loss as a result of the attorney's negligence. <u>Ignarski v. Norbut</u>, 271 Ill.App.3d 522, 648 N.E.2d 285, 288-89 (1st Dist. 1995). Plaintiff has correctly characterized proximate cause in this case as the broader issue of whether, but for defendant's representation, the IRS would have decided to conduct an audit. It was the decision to conduct the audit that, according to the complaint, led to Cleveland's financial collapse and ultimate suicide.

## A. **Suicide**

Plaintiff's claims for damages for Cleveland's suicide are relatively easily disposed of.[2] In Illinois, there is no recovery for suicide following a tortious act; suicide is deemed to be an independent intervening act which the tortfeasor could not reasonably be expected to foresee. Scheefer v. Railroad Co., 105 U.S. 249, 252 (1881); Moss v. Meyer, 117 Ill.App.3d 862, 454 N.E.2d 48, 50-51 (1st Dist. 1983).[3] We see no reason why the suicide rule -- premised on the theory that suicide is not an ordinary, foreseeable result of injury -- is not equally applicable to an action for breach of contract. Accordingly, plaintiff's claims for damages arising out of Cleveland's suicide -- whether

---

[2] Plaintiff's pleading is not clear on the point, but the only way we know of that she could recover for Cleveland's death would be as his next of kin in a wrongful death action. Therefore, we regard this claim for damages resulting from Cleveland's death as a claim brought under the Illinois Wrongful Death Statute. 740 ILCS 180/1.

[3] See also, Jarvis v. Stone, 517 F. Supp. 1173, 1175 (N.D. Ill., 1981); Stasiof v. Chicago Hoist & Body Co., 50 Ill.App.2d 115, 200 N.E.2d 88, 92 (1st Dist. 1964). The Illinois courts recognize an exception to the suicide rule when, as a proximate result of an injury caused by the tortfeasor, the injured party becomes insane or bereft of reason and while in that state commits suicide. The rationale is that the act of suicide is not voluntary and therefore does not break the causal connection between the suicide and the act which caused the injury. Winger v. Franciscan Medical Center, 299 Ill.App.3d 364, 701 N.E.2d 813, 817 (3d Dist. 1998); Stasiof, 200 N.E.2d at 91. On the basis of plaintiff's allegations, however, the circumstances leading to Cleveland's suicide do not come within the exception.

grounded in contract (Count III) or tort (Count IV) -- will be dismissed.

## B. Illinois Survival Statute

Although neither party has addressed the issue, we must consider whether the remaining claims for financial loss and emotional distress brought on behalf of Cleveland's estate survived his death. Under the Illinois Survival Statute, "actions to recover damages for an injury to . . . personal property" survive the death of the injured party.[4] The courts have interpreted this phrase to include contract suits for legal malpractice. Beastall v. Madson, 235 Ill.App.3d 95, 600 N.E.2d 1323, 1326 (3d Dist. 1992); McGill v. Lazarro, 62 Ill.App.3d 151, 379 N.E.2d 16 (1st Dist. 1978). Thus, Cleveland's contractual claims survive (Count III).

The tort claim (Count IV), for financial loss similarly survives as an action to recover damages for injury to personal property. Jones v. Siesennop, 55 Ill.App.3d 1037, 371 N.E.2d 892, 895-96 (1st Dist., 1977) (discussing cases); 1 AM JUR 2d ABAT & R § 91 (1994). However, the fate of the claim for emotional distress is governed by a different rule. Although the Survival Statute

---

[4]/ 755 ILCS 5/27-6.

provides for the survival of "actions to recover damages for an injury to the person (except slander and libel) . . . ,"[5] the Illinois courts have interpreted this to mean that the actions which survive are those for damages of a physical character. See, e.g., Mattyasovszky v. West Town Bus Co., 21 Ill.App.3d 46, 313 N.E.2d 496, 502 (2d Dist. 1974). Specifically, courts have held that actions for the non-physical torts of intentional and negligent infliction of emotional distress do not survive the death of the injured party. Strandell v. Jackson County, Illinois, 648 F. Supp. 126, 135 (S.D. Ill., 1986); Jarvis v. Stone, 517 F. Supp. 1173, 1176 (N.D.Ill., 1981). Accordingly, to the extent that plaintiff seeks to recover damages for Cleveland's emotional distress based on a theory of negligence, that claim has not survived Cleveland's death.[6]

---

[5] Id.

[6] Plaintiff argues that Cleveland's death constituted an accompanying physical injury for purposes of emotional distress damages. This argument would only apply to the tort claim which is barred by the Illinois Survival Statute. In any event, absent a direct and contemporaneous link between the attorney's negligent representation and the physical injury, plaintiff's allegations are not sustainable on this basis. Majca v. Beekil, 289 Ill.App.3d 760, 682 N.E.2d 253, 255 (1st Dist. 1997); Rekosh v. Parks, 316 Ill.App.3d 58, 735 N.E.2d 765, 771 (2d Dist. 2000).

## C. Count III: Remedies in Contract

Turning first to the issue of financial loss, plaintiff alleges that, by triggering the IRS's decision to audit Cleveland, defendant caused Cleveland devastating pecuniary harm. The complaint identifies two specific sources of financial loss to Cleveland: his own lost social security income and his wife's (plaintiff's) personal bankruptcy. Taking the latter claim first, we think that, as a matter of law, defendant has no liability for plaintiff's personal bankruptcy. Actions in legal malpractice arise out of an attorney's breach of his fiduciary relationship with his client; damages are necessarily limited to losses incurred by the client. Doe v. Roe, 289 Ill.App.3d 116, 681 N.E.2d 640, 645 (1st Dist. 1997); Farm Credit Bank of St. Louis v. Gamble, 197 Ill.App.3d 101, 554 N.E.2d 779, 781 (3d Dist. 1990). Here, the link between defendant's alleged breach of his professional duty to his client Cleveland and the personal bankruptcy of Cleveland's wife is simply too attenuated.

Plaintiff's allegations of financial loss in the form of Cleveland's lost social security income are inadequate on their face. While we construe the complaint liberally, plaintiff still

must provide a factual basis for her claims. The complaint states that Cleveland's social security income was confiscated by the IRS, but it fails to specify <u>when</u> this took place. The audit (allegedly precipitated by defendant's malpractice) was scheduled for early 1997 and was later rescheduled for early 1998. Yet, elsewhere in the complaint, plaintiff attributes the confiscation of social security income to the IRS's prior collection activities against Cleveland, which reached their zenith in the early 1990s, long before defendant Rotman had been retained and any conduct on his part could have been the cause. Equally significant is the omission of any facts that would explain <u>how</u> a mere decision to audit on the part of the IRS could result in lost social security income. The complaint simply does not state facts to support a claim to lost social security income. Accordingly, plaintiff's contractual claim for damages for financial loss will be dismissed.

As regards the contractual claim for emotional distress damages, we agree with defendant that the complaint is insufficient both as a matter of law and of fact. Turning first to the law, the parties dispute whether the Illinois courts recognize emotional distress damages in actions for legal malpractice. A client can state a claim in contract if he pleads that, at the time the attorney entered into their relationship, the attorney had reason to know that his breach of contract was likely to cause

emotional distress for reasons other than pecuniary loss. In other words, recovery is excluded unless the contract or the breach is of such a kind that emotional harm was a particularly likely result. Hanumadass v. Coffield, Ungaretti & Harris, 311 Ill.App.3d 94, 724 N.E.2d 14, 18 (1st Dist. 1999); Doe, 681 N.E.2d at 650.

Assuming, as we must for purposes of this motion, that defendant's imprudent advice triggered the IRS's decision to audit, we believe that defendant, as a matter of law, is not liable for the serious emotional disturbance allegedly experienced by Cleveland. Advising clients on the completion of tax returns is a relatively routine matter unlikely to result in the emotional distress claimed here. Defendant's advice to guess at his income and expenses was neither directly linked to nor contemporaneous with Cleveland's emotional injury. Defendant gave his allegedly erroneous advice sometime in 1996. The immediate cause of Cleveland's emotional injury was the notice of audit, which he received in February 1997, and the notice of the rescheduled audit, which he received in December 1997, approximately one month prior to his suicide. Given Cleveland's personal history and his generally distraught state, we agree that some degree of emotional distress was foreseeable; but not the kind or degree of emotional

disturbance alleged in the complaint.[7]  Moreover, foreseeability is not the only factor that determines the scope of the duty an attorney owes his client.  We must also consider the public policy implications of requiring an attorney to shoulder this kind of burden in representing a client.  If liability were to be extended this far, the prudent attorney could hardly be blamed for declining the representation of persons who show signs of being emotionally undone by their tax problems, or any other problems, for that matter.  The result could be that persons in Cleveland's predicament would encounter undue difficulty in obtaining adequate legal representation.  No one would win in this situation.

We are left with the possibility that there may be a viable claim for some degree of emotional distress that was a foreseeable result of defendant's erroneous advice.  Plaintiff has failed to plead facts to show that it was foreseeable to defendant that his erroneous advice was likely to cause emotional harm.[8]  We will

[7] Courts have applied the same foreseeability test to tort claims for legal malpractice.  Under a negligence theory, absent physical injury, the client must allege that the attorney had reason to know that his breach of duty was likely to cause emotional harm.  Suppressed v. Suppressed, 206 Ill.App.3d 918, 565 N.E.2d 101, 106 (1st Dist. 1990); Maere v. Churchill, 116 Ill.App.3d 939, 452 N.E.2d 694, 698 (3d Dist. 1983).  See also, McLaughlin v. Sullivan, 123 N.H. 335, 461 A.2d 123 (1983) (holding that connection between alleged negligence in legal representation and suicide of client was too attenuated to impose liability on attorney).

[8] For example, whereas plaintiff alleges that plaintiff and Cleveland's therapist informed the IRS that Cleveland was suicidal (and attaches copies of letters to the IRS as exhibits to the complaint), we have no information regarding how or when defendant learned of Cleveland's emotional state.

grant her leave to amend her complaint to attempt to remedy this deficiency.

### D. Count IV: Remedies in Tort

In Count IV, plaintiff sues defendant Rotman in tort, seeking to recover damages for financial loss, emotional distress and suicide. Each of these claims fails for the various reasons emphasized above. The claim for damages for suicide is barred by the Illinois suicide rule, and the claim for emotional distress damages by the Illinois survival statute. The remaining claim for financial loss fails for the same reasons as the equivalent contractual claim alleged in Count III (first, that Cleveland's estate cannot recover damages for his wife's personal bankruptcy and, second, that the allegations regarding Cleveland's lost social security income are inadequate on their face). Accordingly, Count IV will be dismissed in its entirety.

## II. Plaintiff's Individual Claims

Finally, in Counts III and IV, plaintiff purports to sue defendant in her individual capacity (as distinct from her capacity as executrix of Cleveland's estate). Defendant moves to dismiss these claims on the ground that he had no attorney-client relationship with plaintiff. In her Response to Defendant's Motion, plaintiff concedes the point.

## CONCLUSION

For the foregoing reasons, defendant Rotman's motion to dismiss is granted both as to plaintiff's claims as executrix of Cleveland's estate and as to plaintiff's individual claims. Counts III and IV of the amended complaint are dismissed. However, plaintiff, as executrix, is granted leave to file an amended Count III, alleging facts to show how defendant Rotman's alleged breach of contract caused Cleveland emotional distress and how that was foreseeable to Rotman. The amendment may be filed by January 17, 2001 and Defendant should plead to the amendment by February 7, 2001. A status conference is set for February 14, 2001 at 9:30 a.m.

DATE:    December 27, 2000

ENTER:

John F. Grady, United States District Judge